UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DAVID ELLIOTT GLUCKMAN,

Plaintiff,

v.

Civil Action No. 3:13–CV–169

UNITED STATES DEPARTMENT
OF LABOR,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Summary Judgment filed by Defendant United States Department of Labor ("DOL"), (ECF No. 13), and a Motion for Partial Summary Judgment filed by Plaintiff David Elliott Gluckman, (ECF No. 15). Plaintiff has sued Defendant pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, asserting that Defendant, through its Office of Foreign Labor Certification ("OFLC" or "Defendant") has failed to produce requested documents in a timely manner. A hearing on both motions was held on October 1, 2013. For the reasons stated below, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment on the exemption-based issues. The Court DENIES Defendant's Motion for Summary Judgment regarding the adequacy of OFLC's search.

## I.    FACTUAL BACKGROUND

Except as otherwise noted, the following facts are not in dispute. OFLC is a component of Defendant's Employment and Training Administration ("ETA"). On March 15, 2012, Plaintiff, an immigration attorney, requested documents under FOIA from the OFLC

regarding OFLC's Program Electronic Review Management System ("PERM"). PERM implements Defendant's responsibilities under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(5)(A), specifically the review and, where appropriate, certification of permanent labor certification applications from U.S. employers. In order to hire a foreign national to work permanently in the United States, a U.S. employer must first obtain a permanent labor certification from OFLC and then submit an immigration petition to the Department of Homeland Security's ("DHS") U.S. Citizenship and Immigration Services ("USCIS"). The permanent labor certification certifies that there are not sufficient U.S. workers who are able, willing, qualified, and available to accept the particular job position intended for the foreign national, and that the employment of the foreign national will not adversely affect the wages and working conditions of similarly employed American workers. *See* 8 U.S.C. § 1182(a)(5)(A). Accordingly, obtaining a permanent labor certification from PERM is the first step in obtaining a green card for a foreign national to work in the United States.

When filing an application for a permanent labor certification, the employer must attest that it has taken certain actions specified in the DOL regulations to determine whether or not there are a sufficient number of American workers able, willing, qualified, and available to take the job position intended for the foreign national and that the employment of the foreign national will not affect the wages and working conditions of similarly employed American workers. *See* 20 C.F.R. § 656.17(e) (describing an employer's obligations to first recruit American employees prior to submitting an application to PERM). In order to monitor employers' compliance with these regulations, PERM audits some applications. Defendant did not reveal information regarding the procedures used by

PERM to audit the permanent labor certification applications or the criteria considered,

thus prompting Plaintiff's request under FOIA for information.

Specifically, Plaintiff's March 15, 2012 FOIA request to OFLC requested:

1.      Any and all policies and/or records containing criteria for—or providing instruction, guidance, or direction related to—the selection of PERM applications for audit and/or the exercise of the Certifying Officer's authority pursuant to 20 C.F.R. § 656.20 created, developed, maintained, used, implemented, and/or disseminated (internally or externally) by the OFLC on or after January 1, 2009; and

2.      Any and all records—such as worksheets, templates, checklists, or similar documents—used by the Certifying Officer, analysts, Department of labor employees, or contractors working with, for, or under the direction of OFLC, when reviewing or processing Applications for Permanent Employment Certification created, developed, used, implemented, and/or disseminated (internally or externally) by the OFLC on or after January 1, 2009. This request does not seek records filled out or completed in relation to specific PERM applications.

(Compl., Ex. A). On April 4, 2012, Defendant advised Plaintiff that his FOIA request had

been assigned to OFLC on March 15, 2012. Defendant informed Plaintiff by email and

regular mail on August 3, 2012 that his request for a waiver of the fees associated with the

FOIA request was denied and advised Plaintiff that he would either need to make an

advance payment of $223.07 or narrow his request in a way that would reduce the fee in

order for Defendant to take further action on the FOIA request. On August 14, 2012,

Defendant notified Plaintiff that it had received his advance payment of $223.07 and that it

anticipated completing the FOIA request within twenty (20) business days.

On September 26, 2012, Defendant wrote Plaintiff seeking clarification on the scope

of the request, to which Plaintiff responded with the requested clarification that same day.

Plaintiff obtained legal counsel after Defendant subsequently failed to provide any

responsive documents. Following a phone conversation between the parties, Plaintiff's

counsel proposed by email on March 14, 2013 an agreement wherein Plaintiff would narrow the scope of the first part of his FOIA request such that the request "does not seek audit responses or Form 9089s submitted by employers to OFLC in relation to specific PERM applications." (Ans., Ex. 1). In exchange, Defendant would make every reasonable effort to respond to the entirety of the FOIA request within twenty (20) business days, but, in any event, within no more than forty-five (45) business days. The email gave Defendant until noon on March 15, 2013 to confirm the agreement in writing, and advised the Defendant that Plaintiff would otherwise immediately proceed with filing a complaint in this Court. The parties dispute whether their initial phone conversation about this proposed agreement required that Defendant confirm the agreement in writing by March 15, 2013 at noon. Nonetheless, Plaintiff filed his Complaint in this Court on March 18, 2013.

Since Plaintiff's filing of this lawsuit, Defendant has provided eight disclosures, including five interim responses between March and May 2013 as well as three additional disclosures made between June and August 2013. Defendant's disclosures are as follows:

(1) March 19, 2013: first interim response consisting of 4 documents released with redactions pursuant to FOIA Exemptions 5[1] and 7(E), and 11 documents released in full;

(2) March 29, 2013: second interim response consisting of 165 documents all fully withheld pursuant to FOIA Exemptions 5 and 7(E);

(3) April 11, 2013: third interim response consisting of 180 documents all fully withheld pursuant to FOIA Exemptions 5 and 7(E);

(4) April 26, 2013: fourth interim response consisting of one document released with redactions pursuant to FOIA Exemptions 5 and 7(E), and 8 documents fully withheld pursuant to FOIA Exemptions 5 and 7(E);

---

[1] Plaintiff disputes Defendant's contention that the first interim response redacted documents pursuant to Exemption 5 as well as Exemption 7(E).

(5) May 10, 2013: fifth interim response consisting of 14 documents released in full, 11 documents released with redactions pursuant to FOIA Exemptions 5 and 7(E), and 64 documents fully withheld pursuant to FOIA Exemptions 5 and 7(E);

(6) June 27, 2013: sixth disclosure consisting of a *Vaughn* index as well as 98 documents released with redactions pursuant to FOIA Exemptions 5 and 7(E), and 186 documents released in full;

(7) July 17, 2013: seventh disclosure consisting of 10 documents fully withheld pursuant to FOIA Exemptions 5 and 7(E), 14 documents redacted pursuant to FOIA Exemptions 5 and 7(E), 5 documents released in full, and 10 previously released documents re-released with corrections; and

(8) August 2, 2013: eighth disclosure consisting of 1 document redacted pursuant to FOIA Exemptions 5 and 7(E), 1 document released in full, and 1 previously released document re-released with corrections.

In summary, 272 documents that were either redacted or fully withheld pursuant to FOIA Exemptions 5 and 7(E) remain at issue.

To search for responsive documents regarding Plaintiff's FOIA request, Defendant conducted two searches of three OFLC offices—the National Office in Washington, D.C.; a National Processing Center in Atlanta, Georgia; and a National Processing Center in Chicago, Illinois. The first search was conducted at the Atlanta National Processing Center ("ANPC") in May and August of 2012, and the second search was conducted by the ANPC, the Chicago National Processing Center ("CNPC"), and the National Office in March of 2013.

## II.    PROCEDURAL HISTORY

On March 18, 2013, Plaintiff filed suit seeking injunctive relief that would require Defendant to produce all records responsive to Plaintiff's FOIA request and a *Vaughn* index of any and all responsive records being withheld under a claim of exemption. Plaintiff further seeks injunctive relief that would enjoin Defendant from withholding any non-exempt records that are responsive to the FOIA request, in addition to attorneys' fees and costs. Defendant filed its Motion for Summary Judgment on August 2, 2013, arguing that it

is entitled to judgment as a matter of law because it has provided 217 of the 489 documents responsive to Plaintiff's FOIA request in full and without redaction. Regarding the remaining 272 documents at issue, Defendant avers that it released 121 documents with necessary redactions and withheld the remaining 151 documents entirely pursuant to FOIA Exemptions 5 and 7(E). *See* 5 U.S.C. §§ 552(b)(5), (b)(7)(E).

On August 14, 2013, Plaintiff filed a response in opposition to Defendant's Motion for Summary Judgment and also filed a Cross Motion for Partial Summary Judgment. Plaintiff asserts that Defendant is not entitled to summary judgment because material issues of fact remain in dispute as to Defendant's search for documents responsive to his FOIA request, but that Plaintiff is entitled to partial summary judgment because no factual issues remain as to Defendant's improper withholdings of the 272 documents at issue. As an alternative to summary judgment, Plaintiff requested that the Court conduct an *in camera* review of the requested documents. A motions hearing was held on October 1, 2013. The Court subsequently conducted an *in camera* review of a portion of the relevant withheld documents in this matter.

### III.    STANDARD OF REVIEW

Disputes over FOIA requests that are brought to court should generally be resolved on summary judgment. *See Harrison v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004). A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to

trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks and citations omitted). However, if the Court finds that there *is* a genuine issue of material fact, the motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). "The moving party bears the burden of establishing the nonexistence of a triable issue of fact by showing— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation marks and citations omitted). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment may be granted if the nonmoving party's evidence is only colorable or is not significantly probative. *Anderson*, 477 at 249–50.

When faced with crossmotions for summary judgment, the Court applies the same standard as that applied to individual motions for summary judgment. *See Rossignol*, 316 F.3d at 523. The Court must consider "each motion separately on its own merits to

determine whether either of the parties deserves judgment as a matter of law." *Id.* (internal citations and quotation marks omitted).

## IV.     DISCUSSION

### A. Applicability of Exemptions

Subject to specified statutory exemptions, FOIA requires federal agencies to promptly make its records available to any member of the public who makes a request for the records that reasonably describes the records sought and is made in accordance with published rules regarding the timing, place, fees, and procedures to be followed. *See* 5 U.S.C. § 552(a)(3)(A). In the interest of promoting an informed citizenry, "[i]n general, FOIA exemptions should be narrowly construed to favor disclosure." *Harrison*, 372 F.3d at 290 (citing *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 354 (4th Cir. 1991)). The federal agency bears "the burden of demonstrating that a requested document falls under an exemption." *Id.* (citing *City of Va. Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir. 1993)). "The government can meet this burden by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Id.* (citing *Miscavige v. IRS*, 2 F.3d 366, 367-68 (11th Cir. 1993)). "Whether a document fits within one of FOIA's prescribed exemptions is a matter of law," *Wickwire Gavin*, *PC v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004), and the court determines the matter *de novo*, 5 U.S.C. § 552(a)(4)(B).

1.      Analysis of Exemption 7(E)

Under Exemption 7(E), an agency may withhold:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

*Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) (citing 5 U.S.C. § 552(b)(7)). An agency may properly withhold "internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Id.* at 79. "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal citations omitted) (quoting *Mayer Brown, LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). In order for the Court to ascertain whether this exemption applies, OFLC must show that the relevant records were compiled for "law enforcement purposes."

Under Exemption 7, "law enforcement purposes" includes enforcement pursuant to both civil and criminal statutes. *See, e.g.*, *Tax Analysts*, 294 F.3d at 77. "FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions" *Id.* "Courts can usually assume that government agencies act within the scope of their legislated authority." *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982). Agencies whose principal function is not law enforcement face a more exacting scrutiny of Exemption 7 claims. *Id.*

The Government usually meets this burden by showing that the records at issue are involved with the enforcement of a statute or regulation within its authority and that the records were compiled for adjudicative or enforcement purposes. *See, e.g.*, *Cooper Cameron*

*Corp. v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 545 (5th Cir. 2002) (holding that the Occupational Safety and Health Administration ("OSHA") acted pursuant to its statutory mandate to inspect workplaces, question employees, and cite employers that violate safety and health regulations); *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1211 (D.C. Cir. 1986); *see also Allnutt v. U.S. Dep't of Justice*, Nos. CIV. Y-98-901, CIV. Y-98-1722, 2000 WL 852455, at *1 (D. Md. Oct. 23, 2000), *aff'd sub nom. Allnut v. Handler*, 8 F. App'x 225 (4th Cir. 2001) (holding that the Internal Revenue Service may use Exemption 7(E) because it has a law-enforcement mandate).

At the outset, Defendant cannot show that OFLC has an enforcement mandate. Instead, OFLC refers any possible fraud or willful misrepresentation in connection with the permanent labor certification program to the DOJ, DHS, or other government entity, as appropriate, for investigation, and sends a copy of the referral to the Department of Labor's Office of Inspector General. 20 C.F.R. § 656.31. In comparison, the *Cooper Cameron Corporation* court held that that OSHA had an enforcement mandate under 29 U.S.C. § 659, which enabled OSHA to assess penalties against employers found in violation of occupational safety standards. 280 F.3d at 545 n.23. Similarly, in *Birch*, a court held that the Postal Service met the threshold because it had statutory authority to investigate and enforce laws regarding the use of mail and other postal matters under 18 U.S.C. § 3061. 803 F.2d at 1211. Under section 3061, the Postal Service has the power to serve warrants, make arrests, carry firearms, and make seizures of property. 18 U.S.C. § 3061(a). In contrast, OFLC does not have any law enforcement related mandate.

Additionally, the Court finds that the withheld documents at issue were not "compiled for law enforcement purposes." While it is true that OFLC may refer specific

10

cases to law enforcement agencies, OFLC does not assert that any of the 272 withheld documents pertain to any specific violations being investigated by an agency with an enforcement mandate. The 272 relevant withheld documents are better characterized as compiled for audit purposes—the documents list audit criteria, itemize the procedures OFLC staff should take when processing applications with specific audit criteria present, and contain templates of audit notification letters. To construe these documents as "compiled for law enforcement purposes" would improperly broaden the meaning of the term. As such, the Court holds that Exemption 7(E) is inapplicable to the 272 documents at issue in this matter.

2.      Exemption 5

Under Exemption 5, an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Encompassed within this exemption is the "deliberative process privilege," which applies where documents are both predecisional and deliberative. *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 370, 371-72 (4th Cir. 2009). The agency has the burden to show that specific exemptions apply to specific documents listed in its *Vaughn* index. *See Rein*, 553 F.3d at 369; *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1249 (4th Cir. 1994); *see also City of Va. Beach, Va.*, 995 F.2d at 1253–54. "The agency must therefore explain why the exemption applies to the document or type of document withheld." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

Communications are predecisional where they are "antecedent to the adoption of an agency policy." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011). Communications are deliberative where the "material reflects the give-and-take

of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Rein*, 553 F.3d at 372-73. "Thus, the privilege will encompass recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* at 373 (internal quotation marks omitted) (quoting *City of Va. Beach, Va.*, 995 F.2d at 1253). "[T]he deliberative process privilege embodied in Exemption 5 serves a number of purposes among which are the protection of subordinates' willingness to provide decision-makers with frank opinions and recommendations and the prevention of the premature disclosure of proposed policies before they have been finally formulated or adopted." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 775 (D.C. Cir. 1988).

> [I]f documents are not a part of a clear 'process' leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional; in such a case there is an additional burden on the agency to substantiate its claim of privilege. The identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Additionally, contested documents must be viewed in the context with which the documents are generated in order to ascertain whether the materials "bear on the formulation or exercise of agency policy-oriented *judgment* . . . [and] whether disclosure would tend to diminish candor within an agency." *City of Va. Beach, Va.*, 995 F.2d at 1254 (internal citations omitted); *see also Carter, Fullerton & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 739 (E.D. Va. 2009) ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; . . . the lower courts should be wary of interfering with this

process. . . . [T]he line between predecisional documents and postdecisional documents may not always be a bright one.") (quoting *City of Va. Beach, Va.*, 995 F.2d at 1253).

In *Coastal States Gas Corporation*, a district court found that documents labeled "drafts, proposals and recommendations" were properly withheld under Exemption 5 because the Government's *Vaughn* index revealed that they were drafted at a time when litigation was likely and, as such, were protected by the attorney work-product privilege. 617 F.2d at 860. On appeal, the Department of Energy argued that "these memoranda were 'pre-decisional' because the regional counsel did not have final decision-making authority over interpretation of the regulations, and they were 'deliberative' because they were an early part of the enforcement process, subject to continuing debate within the agency as the investigation continued." *Id.* at 866. The District of Columbia Circuit held that these documents were not "predecisional" because they were "simply straightforward explanations of agency regulations in specific factual situations . . . more akin to a 'resource' opinion about the applicability of existing policy to a certain state of facts, like examples in a manual, to be contrasted to a factual or strategic advice giving opinion." *Id.* at 868. The court further held that the documents did not reflect "agency give-and-take of the deliberative process by which the decision itself is made." *Id.* (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).[2]

Upon *in camera* review, the Court finds that the OFLC documents are not recommendatory in nature. Instead, they are more similar to the legal memoranda used as

---

[2] The court further held that the case was unique because of the atmosphere of crisis at the agency during the time the documents were issued. *Coastal States Gas Corp.*, 617 F.2d at 869 n.22. The court stated the agency was failing to fulfill an intense need for guidance in the form of final interpretations and regulations by both the compliance personnel and the companies being audited. *Id.*

13

"resource opinions" by Department of Energy employees in *Coastal States Gas Corporation*. OFLC has not met its burden to show that the withheld documents were not official policies or that they were subject to continuing debate. To the contrary, OFLC's *Vaughn* index indicates that the vast majority of the documents have been withheld because disclosure "would reveal [OFLC] techniques or procedures and guidelines." (*See, e.g.*, Carlson Decl., Ex. 14, 1). OFLC consistently characterizes these documents as policy, criteria, or templates used by lower level employees in order to assess PERM applications. (*See, e.g.*, Def.'s Mem. Supp. Mot. Summ. J. 19-21). The Court's *in camera* review of a portion of the relevant documents reveals that the withheld documents are not predecisional in nature. As such, Exemption 5 is inapplicable to the 272 documents withheld by Defendant as a matter of law. [3]

### B.  Adequacy of Defendant's Response to Plaintiff's FOIA Request

An agency subject to a FOIA request must demonstrate that "it has conducted a search reasonably calculated to uncover all relevant documents," although "the relevant question is not whether every single potentially responsive document has been unearthed." *Ethyl Corp.*, 25 F.3d at 1246 (internal quotation marks and citations omitted). In demonstrating that its search was adequate, "an agency may not rest on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure." *Id.* at 1246-47 (internal quotation marks and citations omitted). "Rather, the affidavit must be reasonably detailed . . . and [aver] that all files likely to contain responsive materials (if such records exist) were searched so as to give the

---

[3] Because these documents are not predecisional, Defendant has failed the threshold test for the application of Exemption 5, and the Court need not decide whether the documents are deliberative

requesting party an opportunity to challenge the adequacy of the search." *Id.* at 1247 (internal quotation marks omitted) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

        1.        <u>Adequacy of Places Searched</u>

"FOIA demands only a reasonable search tailored to the nature of a particular request. When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

In *Oglesby*, a plaintiff challenged the reasonableness of the State Department's search because the agency only searched the record system "most likely" to contain the requested information. 920 F.2d at 67. The State Department chose to search a single record system because it was the one "most likely to contain the information which had been requested for the time period" based on the plaintiff's letter. *Id.* The court held that the State Department's affidavit did not adequately describe the agency's search. *Id.* It reasoned that "[t]here is no requirement that an agency search every record system. . . . However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.* at 68 (internal citations omitted). Further the court held that, at the very least, the state was required to explain that no other record system was likely to produce results. *Id.* Similarly, in *Davis v. U.S. Department of Defense*, another case cited by Plaintiff, the court held that an agency's declaration regarding the record systems it searched were conclusory where they simply averred that

they were searched "because they were the locations where records related to the request were reasonably expected to be found." 3:07-CV-492, 2010 WL 1837925, at *5 (W.D.N.C. May 6, 2010).

In contrast, in *Campbell*, the District of Columbia Circuit upheld the Federal Bureau of Investigation's ("FBI") decision to limit its search for information to files that it could locate by searching its Central Records System index, which was capable of locating most, but not all, documents responsive to a general request for information about a particular subject. 164 F.3d at 27. The court recognized that while there was another potentially responsive record system, the agency was not required to search the second system unless expressly asked to do so in a FOIA request because it was unlikely that additional information would be found. *Id.* at 27-28.

Defendant represents that it has searched some combination of records from email accounts, shared drives, and hard copy files in the ANPC, CNPC, and National Office. Each office searched a different combination of things. At ANPC, four certifying officers were directed to conduct separate searches for the Audit, Appeals, Supervised Recruitment, and Analyst Review Divisions for "all records responsive to plaintiff's . . . request." (Carlson Decl. ¶ 43). OFLC employees performed searches on the ANPC, CNPC, and National Office shared drives—which contained all information, including policy, emails, directives, and written communications regarding case adjudications. In addition, some individuals searched their emails and their own hard drives. Defendant describes the shared drive and asserts that additional records such as employee emails on computer hard drives or paper files in hard copy are rare. Defendant also divulged that OFLC had an additional office, the National Prevailing Wage Center, which processes prevailing wage data for OFLC programs

located in Washington, D.C. Defendant reports that the records of the National Prevailing Wage Center were not searched because it would not have contained responsive records.

It is clear that Defendant's search is dissimilar to the inadequate search in *Oglesby* where the agency confined its search to its search to only one record system based on the bald assertion that it was the only one that would have contained pertinent records. OFLC's search is closer to that of the FBI's search in *Campbell* because Plaintiff did not request that a particular record system be searched and because the OFLC has asserted that its offices' various shared drives are the systems most likely places to locate most, if not all, of the responsive documents to Plaintiff's request. Under *Campbell*, it is not dispositive that Defendant's employees searched or did not search other systems or formats—including National Prevailing Wage Center records, personal hard drives, and paper hard copy files— for documents that were unlikely to be found. As such, the Court holds that the scope of OFLC's search was adequate.

2.     Withholding of Responsive Documents

FOIA requires a requester to "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3). An agency also has a duty to construe a FOIA request liberally. *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). "[An] agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985). "[W]hen a FOIA requester 'seek[s] all of a certain set of documents' while also 'evincing a heightened interest in a specific subset thereof,' such a request 'is reasonably susceptible to the broader reading' of seeking the entire set of documents despite the fact that a specific

subset of documents is named." *Mobley v. CIA*, 924 F. Supp. 2d 24, 39 (D.D.C. 2013) (quoting *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003)).

In *Nicholls v. U.S. Office of Personnel Management*, a court held that the Office of Personnel Management's ("OPM") "liberal" interpretation of a plaintiff's request was improper in light of the plain meaning of the request. 863 F. Supp. 2d 4, 10 (D.D.C. 2012). The plaintiff requested "records relating to any formal or informal appeals made either to any individual agency or to OPM regarding the termination, denial of employment, or withdrawal of an employment offer pursuant to 5 U.S.C. § 3328." *Id.* OPM reasoned that "any adjudication—and, presumably, any reconsideration—occurs before terminations or denials of employment, thus rendering the records not responsive." *Id.* at 11. The court held that OPM read the plaintiff's request too narrowly: "plaintiff sought documents relating to appeals . . . *regarding* the termination, denial of employment, or withdrawal of an employment. . . . She did not . . . request documents related to 'appeals *from*' employment actions." *Id.* (internal citations omitted). The court reasoned that the plaintiff's use of words like "relating to" and "regarding" plainly indicated that she sought information about appeals lodged at any point during the section 3328 process, not only those taken after the relevant employment action. *Id.*

In *National Security Counselors v. Central Intelligence Agency*, a court rejected the National Security Administration's ("NSA") attempt to restrict the meaning of a requestor's FOIA attempt based on the court's more liberal construction. Civil Action Nos. 11–443, 11–444, 11–445(BAH), 2013 WL 4111616, at *36 (D.D.C. Aug. 15, 2013). The plaintiff asked for copies of all current training handbooks, manuals, guidelines, checklists, worksheets, and similar documents provided to NSA FOIA and Privacy Act analysts. *Id.* The plaintiff

18

contended that NSA failed to liberally construe his FOIA request where it failed to provide copies of templates used in FOIA request processing by NSA employees. *Id.* The NSA contended that the templates were not responsive because they were "boilerplate paragraphs" that did not contain "guidance, policy, or procedures for the NSA employee to consider or evaluate." *Id.* at *36. The *National Security Counselors* court concluded that the templates should have been included in a "liberal" interpretation of the plaintiff's request because they were arguably included under the definition of "similar documents" and that the "templates appear[ed] to play an important role in the guidance documents that the NSA provide[d] to its FOIA analysts." *Id.* at *37.

Here, Defendant properly withheld the documents at issue by reasonably interpreting them to be unresponsive to Plaintiff's FOIA request. In the initial FOIA request at issue, Plaintiff's sought:

1. Any and all policies and/or records containing criteria for - or providing instruction, guidance, or direction related to - the selection of PERM applications for audit and/or the exercise of the Certifying Officer's authority pursuant to 20 C.F.R. § 656.20, created, developed, maintained, used, implemented, and/or disseminated (internally or externally) by the OFLC on or after January 1, 2009.

2. Any and all records—such as worksheets, templates, checklists, or similar documents—used by the Certifying Officer, analysts, Department of labor employees, or contractors working with, for, or under the direction of OFLC, when reviewing or processing Applications for Permanent Employment Certification created, developed, used, implemented, and/or disseminated (internally or externally) by the OFLC on or after January 1, 2009. This request does <u>not</u> seek records filled out or completed in relation to specific PERM applications.

(Compl., Ex. A).[4]

---

[4] Here, there appears to be a factual dispute between the parties. Defendant asserts that Plaintiff agreed to limit his FOIA request on March 14, 2013. (*See* Second Carlson Decl. ¶¶ 38, 43). Plaintiff asserts that he merely proposed to limit his request if OFLC accepted in writing and that OFLC

Defendant excluded documents it described as Board of Alien Labor Certification Appeals ("BALCA") generated documents, employer specific documents, ETA Form 9089s, and duplicates.

Unlike in *Nicholls*, Defendant's plain meaning interpretation of Plaintiff's request for criteria providing instruction, guidance, or direction related to the selection of PERM applications was accurate. The BALCA documents at issue are in the public domain and it was reasonable for OFLC to consider them unresponsive to Plaintiff's request because they are not "policies" or "guidance" containing criteria for the selection PERM applications for audit or records used by OFLC staff when processing PERM applications. (*See* Second Carlson Decl. ¶ 36). Similarly, unlike in *National Security Counselors*, BALCA opinions are not "templates," "checklists," or similar guidance documents even under a broad definition or liberal interpretation.

Defendant also avers that production of the PERM Program Integrity Protection ("PPIP") files were nonresponsive because they are a "live" list of constantly updated employers that have been precluded from filing PERM applications. While this list is reviewed by OFLC employees, it is not a worksheet, checklist, or template used when reviewing applications. Under *National Security Counselors*, the agency reasonably interpreted Plaintiff's request for worksheets, templates, and other similar documents related to processing of PERM applications as a request for "guidance documents" or

---

never fulfilled the condition to write a response. (Pl.'s Mem. Opp. 20). Defendant counters that the parties actually agreed to narrowing the FOIA request after a telephone conference on March 14, 2013 and that Plaintiff attempted to make the parties agreement contingent upon written confirmation on March 15. (Carlson Decl. ¶¶ 37-38; Second Carlson Decl. ¶¶ 39-40). While we have no record of the teleconference, it appears that the agreement outlined in an email by the parties on March 14, 2013 does contain a clause requiring written confirmation by the Defendant. (Def.'s Ans., Ex. 1, at 2). In any event, this fact is not material because the relevant documents are nonresponsive under either interpretation of the FOIA request.

"instructions" used by OFLC employees in processing such applications. The PPIP files were properly withheld because they fell outside even a liberal interpretation of Plaintiff's effective request for instructions regarding how OFLC employees process PERM applications. Similarly, the PPIP list does not constitute OFLC "policies" regarding the selection of PERM applications for audit because, as a "blacklist" of banned employers, it falls outside any reasonable interpretation of Plaintiff's request. Accordingly, the Court finds that OFLC reasonably interpreted Plaintiff's FOIA request and properly withheld only unresponsive documents.

### 3.     Description of Search Methodology

As stated previously, in judging the adequacy of an agency search for documents, the relevant question is whether the agency has "demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Ethyl Corp.*, 25 F.3d at 1246-47 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983)). "In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search was conducted in a manner 'consistent with customary practice and established procedure.'" *Id.* "Rather, the affidavit must be reasonably detailed, 'setting forth the search terms and the type of search performed.'" *Id.* (citing *Oglesby*, 920 F.2d at 68). The vast majority of cases in which an agency's declaration was found to be deficient regarding its description of search methodology and terms used are where agencies provide conclusory descriptions or no description at all. *See, e.g.*, *Oglesby*, 920 F.2d at 68; *Kean v. NASA*, 480 F. Supp. 2d 150, 157 (D.D.C. 2007) (describing agency's declaration as inadequate because it provided neither information on databases searched nor methodology and search terms used).

Defendant reports that it provided a list of search terms to the employees that searched the National Office records. Defendant states that almost every employee at the National Office used the terms when searching electronic records in addition to relying on their own specialized knowledge. Declarant Carlson stated that he personally used the recommended terms. Defendant also reports that two National Office employees used their own list of search terms and that one employee "did not use a coordinated set of search terms." (Carlson Decl. ¶¶ 31-33).

In contrast, with regard to the searches conducted at ANPC, Defendant repeatedly asserts that each person who searched a shared drive "conducted a search for what was responsive and did not use a coordinated set of search terms, but instead relied upon their specialized knowledge of the relevant files to pull all documents that may be responsive." (*E.g.*, Second Carlson Decl. ¶ 14). Regarding CNPC, Defendant also asserts that each employee did not use a specific set of search terms. The declaration merely indicates that each employee was provided a list of search terms including "guidance, directives, PPIP, worksheets, audit, criteria, audit criteria, and directions." (Carlson Decl. ¶ 53).

The Court finds that OFLC applied adequate search methodology in its search of the National Office records. During the search of the National Office, the majority of OFLC employees used defined search terms that are readily ascertainable by the Court. As in *Oglesby* and *Ethyl Corporation*, the OFLC's terms were reasonably calculated to uncover all relevant documents.

 Regarding OFLC's search of the ANPC and CNPC, the Court lacks sufficient information from which to decide the adequacy of the searches because Defendant's employees did not use a specific set of search terms. Defendant's explanations of their

searches are thus conclusory and insufficient, and Defendant has not met its burden to demonstrate the adequacy of its search. *See Ethyl Corp.*, 25 F.3d at 1246-47. Because the methodology of OFLC's search of the ANPC and CNPC was inadequate, summary judgment is inappropriate in this matter. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment.

4.        <u>Countervailing Facts and Bad Faith</u>

Because the Court has determined that there is an issue of material fact as to the adequacy of OFLC's search, the Court declines to address whether the agency's search was made in bad faith or whether countervailing facts exist.

**V.        CONCLUSION**

For the aforementioned reasons the Court GRANTS Plaintiff's Motion for Partial Summary Judgment on the exemption-based issues and DENIES Defendant's Motion for Summary Judgment regarding the adequacy of OFLC's search.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___26th___ day of November 2013.